IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEREMIAH MOORE, Sr.,<br> Plaintiff, | :<br>:<br>: |
| v. | :   CIVIL ACTION NO. 21-CV-2880 |
| COMMONWEALTH OF<br>PENNSYLVANIA, *et al.*,<br> Defendants. | :<br>:<br>:<br>: |

## MEMORANDUM

SÁNCHEZ, C.J.                               JUNE 28, 2022

   Jeremiah Moore, Sr., who was formerly incarcerated at SCI Phoenix,[1] filed this civil rights Complaint naming as Defendants the Commonwealth of Pennsylvania; the Montgomery County District Attorney Office, Montgomery County District Attorney Kevin R. Steele, and Assistant District Attorneys Richard H. Bradbury, Jr., Scott Frank Frame, and Kathleen A. McLauguin (the "Prosecutor Defendants"); "Magisterial District Court 38-1-12"; Judges Edward C. Kropp, Sr. and Greggory Scott (the Judicial Defendants); "Borough Hall Police Department"; Pottstown Police Officers Craig A. Johnson, Jamie O'Niell,[2] and Mark Boyce (the "Police Officer Defendants"); Pennsylvania Board of Probation and Parole; Parole Agents Rebecca Shives and Michael K. Ward, Pennsylvania Parole Board Acting Secretary Scott K. Woolf, and Parole Board Hearing Examiners Escaillas and Donald (the "Parole Board Defendants"). Moore

---

[1] Moore filed a change of address with the Clerk of Court on September 14, 2021 indicating he was no longer incarcerated at SCI Phoenix, but had been moved to a community correctional center. (ECF No. 6.) On December 15, 2021, he filed another change of address indicating he was released to his home. (ECF No. 8.)

[2] Defendant O'Niell's name is spelled differently in exhibits attached to the Complaint. The Court will use the spelling supplied by Moore.

also seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Moore leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

## I.     FACTUAL ALLEGATIONS

Moore alleges that he was handcuffed by Defendant O'Niell on September 13, 2019, taken into custody, transported to the Pottstown borough hall, and placed in a holding cell. (Compl. (ECF No. 2) at 4.)[3] Defendant Boyce allegedly authorized a warrantless search incident to Moore's arrest. (*Id*. at 14.) Defendant Johnson came to the holding cell and told Moore he was releasing the keys of the vehicle in which Moore was stopped, but a cell phone and $580 found in Moore's wallet was going to be confiscated. (*Id*. at 4.) Johnson told Moore he was being investigated and was being charged with drug offenses. (*Id*.) He was taken before a judge that day as well. (*Id*. at 4-5.) Johnson then transported Moore back to the holding cell and gave him a copy of the charges, criminal complaint, arrest warrant, and affidavit of probable cause. (*Id*. at 5.) He was then transported to the Montgomery County Correctional Facility. (*Id*.)

Moore was served a notice of charges and hearing by the Commonwealth Board of Probation and Parole on September 18, 2019. (*Id*. at 5.) On September 23, he had a hearing before the Board's hearing examiner Defendant Donald Escaillas.[4] (*Id*.) On November 27, 2019, Moore was served with notice of charges and hearing by the Board, Defendant Parole Agent Rebecca Shives and Michael K. Ward. (*Id*. at 6.) A hearing was held on December 10,

---

[3] The Court adopts the pagination supplied by the CM/ECF docketing system.

[4] Moore names two hearing examiners as Defendants in his Complaint, namely "Escaillas" and "Donald." Moore only makes allegations about Donald Excaillas and never mentions a second hearing examiner. If Moore intended to name a second Defendant named "Donald," the lack of any allegations concerning that individual renders any claim against him implausible.

conducted by Defendant Escaillas.  (*Id.*)  Moore thereafter received a letter from the Board, allegedly containing an incorrect date, notifying him he was being detained pending the disposition of the new criminal charges.  (*Id.*)

Moore was arraigned before defendant Judge Greggory Scott[5] on September 13, 2019. (*Id.* at 38; *see Commonwealth v. Moore*, MJ-38112-CR-417-2019 (M.C. Montgomery).) Moore's preliminary hearing on the new criminal charges was conducted on October 2, 2019, before Defendant Judge Edward C. Kropp, where two of the charges were dismissed, and five others were held for court.  (Compl. at 5.)  In January 2020, Moore received a discovery packet from Defendants the Montgomery County District Attorney's Office, Kevin Steele, and Richard H. Bradbury, Jr.  Moore alleges that this packet included an arrest warrant containing a "scribbling forged to imitate and impose as a signature of a [sic] issuing authority, there lacks the seal of a magistrate."  (*Id.* at 6-7; *see also id.* at 43-44.[6])  He asserts the arrest warrant and affidavit of probable cause contain no signatures or dates.  (*Id.* at 7; *see also id.* at 45-49.[7]) Moore alleges that he was scheduled for a pretrial conferences at the Montgomery County

---

[5] Judge Scott's first name is spelled differently in the state court public docket.  The Court will use the spelling from the Complaint.

[6] The exhibit, in which Moore alleges there is a "scribbling" contains an illegible signature.  For purposes of statutory screening, the Court accepts as true Moore's allegation that the signature was "forged."  The Court also notes that, while Moore alleges the document lacks a seal, the document contains the word "SEAL."  (Compl. at 44.)

[7] The exhibit to which Moore refers is the criminal complaint in his case.  It contains the handwritten words "Prima Facie on all charges except for (1) ct paraphernalia and resist arrest which are dismissed.  10-2-19  ECKSR."  (Compl. at 46.)  Given that Moore alleges that two of the charges against him were dismissed at his preliminary hearing by Judge Edward C. Kropp, Sr., the Court understands the handwriting to reflect Judge Kropp's ruling that probable cause existed for the three charges that proceeded past the preliminary hearing conducted on October 2, 2019.

3

Courthouse in January, February, and March of 2020, but was never called into the courtroom to argue a motion he had filed *pro se* in his criminal case. (*Id.*)

On November 22, 2019, Defendant Assistant District Attorney Scott Frank Frame filed an *in rem* petition to forfeit Moore's property.[8] (*Id.*) Moore filed a response to the petition, and on January 8, 2020, the Commonwealth filed a notice to seek judgment against Moore. (*Id.* at 8.)

In November 2020, Moore was moved from the Montgomery County Correctional Facility to SCI Coal Township, then in January 2021 to SCI Phoenix. (*Id.*) Moore asserts he requested a hearing before the Parole Board on February 17, 2021, but the request was denied. (*Id.* at 8.)

Moore alleges that the Commonwealth "kidnapped" him on September 13, 2019, the date he was arrested by Defendant O'Niell, and held for "ransom" of a $50,000 bail bond. (*Id.* at 11.) He asserts he was unlawfully detained pending his trial; unlawfully arrested and detained illegally by the Pottstown Police Department; and unlawfully detained on illegal criminal charges by the Commonwealth and Montgomery County District Attorney's Office in violation of his Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights. (*Id.* at 12.) He also invokes the Universal Declaration of Human Rights. (*Id.*) He contends that the Prosecutor Defendants, the Judicial Defendants, the Police Officer Defendants, and the Parole Board Defendants all conspired to kidnap him and detain him in violation of his constitutional rights. (*Id.* at 12-15.) Moore seeks a declaration that his rights were violated, an injunction ordering the Commonwealth to end its prosecution of him and ordering his immediate release, and money damages. (*Id.* at 15-16.)

---

[8] Moore alleges that Defendant McLauguin also was involved with the forfeiture proceeding. (Compl. at 12.)

Attached to Moore's Complaint are numerous exhibits, including police reports, copies of pleadings from his state court criminal and forfeiture cases, and parole revocation proceedings. In an Incident Report filed by Defendant Johnson, he asserted that he observed a vehicle, later determined to be driven by Moore, with an expired inspection sticker drive past him. (*Id*. at 26.) He alerted Defendant O'Niell by radio and proceeded to follow the vehicle. (*Id*.) O'Niell radioed that Moore had stopped his vehicle, exited, started walking away, and refused to obey commands. (*Id*. at 27.) Johnson observed Moore running through a parking lot and used his police vehicle to block Moore from continuing to run. (*Id*.) While Moore was on the ground, he attempted to break the cell phone he was holding. (*Id*.) A search of Moore's pockets incident to the arrest allegedly located five glassine zipper bags, and $580. (*Id*.) A consent search of the vehicle turned up suspected crack cocaine. (*Id*.) This same information is contained in an Affidavit of Probable Cause signed by Johnson. (*Id*. at 35.) O'Niell also submitted an Incident Report asserting that, when he attempted to stop Moore's vehicle, Moore turned into an alley, got out of the car, and began walking away. (*Id*. at 29.) After Moore was apprehended by Johnson, O'Niell located the owner of the vehicle, the mother of a woman Moore was dating, who consented to a search of the vehicle. (*Id*.)

Also included in the exhibits is a Notice of Charges and Hearing issued by the Parole Board on September 17, 2019, notifying Moore that his new criminal charges constituted a technical violation of his parole and scheduling a preliminary hearing. (*Id*. at 36.) The Notice records that he was released on parole on April 25, 2016 from a sentence whose maximum release date is January 21, 2023. (*Id*.) A similar Notice dated November 22, 2019 scheduled a violation hearing. (*Id*. at 40.) The Board issued a decision on November 27, 2019 that Moore be detained pending the disposition of his new criminal charges. (*Id*. at 42.) Finally, included with

the Complaint are a copy of the Petition filed by the Commonwealth seeking the *in rem* civil forfeiture of $580 in *Commonwealth v. Five Hundred Eighty Dollars (Jeremiah Moore)*, MD: 2082-2019 (C.P. Montgomery), sent to Moore on November 25, 2019, signed by Defendant Frame, and the *pro se* response Moore submitted thereafter to the Court of Common Pleas. (*Id.* at 64, 67-69, 71-73.) The Petition asserts the funds were the proceeds of drug transactions. (*Id.* at 69.)

A review of public records indicates that Judge Edward C. Kropp, Sr. was the presiding judge, and Richard Bradbury, Jr. of the Montgomery County District Attorney's Office represented the Commonwealth in Moore's criminal prosecution. *See Commonwealth v. Moore*, CP-46-CR-0006395-2019 (C.P. Montgomery). On August 12, 2021, Moore pled guilty to the summary offense and the remaining drug paraphernalia and resisting arrest charges were dismissed. (*Id.*)

## II. STANDARD OF REVIEW

Moore is granted leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"

*Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). As Moore is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III. DISCUSSION

Moore seeks money damages and other relief due to alleged violations of his civil rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### A. Declaratory and Injunctive Relief

In addition to money damages, Moore seeks a declaration that his rights have been violated and an injunction directing that he be released from custody. Both of these forms of relief are improper. Declaratory relief is unavailable to adjudicate past conduct, so Moore's request for a declaration that his rights were violated in the past is not a plausible remedy. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x

80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

The request for prospective injunctive relief is dismissed with prejudice. Moore seeks an injunction ordering the Commonwealth to end its prosecution of him and ordering his immediate release. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Because this remedy is not available for a § 1983 claim, the request for prospective injunctive relief is not plausible.

### B. Claims for Money Damages

#### 1. Claims Based on the Universal Declaration of Human Rights

Moore invokes the Universal Declaration of Human Rights as a basis for his claims. As the United States Court of Appeals for the Third Circuit has recognized, "the Universal Declaration of Human Rights is a non-binding declaration that provides no private rights of action." *See United States v. Chatman*, 351 F. App'x 740, 741 (3d Cir. 2009) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004)) (explaining that the Universal Declaration of Human Rights is merely a resolution of the United Nations and "does not of its own force impose obligations as a matter of international law"). District courts throughout this Circuit have

8

routinely dismissed claims brought under the Universal Declaration of Human Rights with prejudice for failure to state a claim or as legally frivolous.  *See, e.g.*, *Best v. S.C.I. Huntingdon*, No. 19-01599, 2019 WL 5866707, at *5 (M.D. Pa. Oct. 9, 2019), *report and recommendation adopted*, 2019 WL 5868259 (M.D. Pa. Nov. 8, 2019) (recommending dismissal of claims under the Universal Declaration of Human Rights for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) in a prisoner civil rights action); *Hamilton v. Dolce*, No. 18-2615, 2019 WL 4509375, at *3 (D.N.J. Sept. 19, 2019) (dismissing with prejudice *pro se* prisoner's claims for violations of the Universal Declaration of Human Rights); *Pavalone v. Pres. Mgmt. Inc.*, No. 18-191, 2019 WL 1117931, at *3 (M.D. Pa. Jan. 8, 2019), *report and recommendation adopted*, 2019 WL 1117919 (M.D. Pa. Mar. 11, 2019) (recommending dismissal of non-prisoners' claims for the "alleged violation[s] of their rights under the Universal Declaration of Human Rights . . . as legally frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)).  Accordingly, to the extent Moore raises claims against the Defendants for violating the Universal Declaration of Human Rights, they are dismissed with prejudice as any amendment would be futile.

      **2.**      **Claims Against the Commonwealth, "Magisterial District Court 38-1-12," and the Pennsylvania Board of Probation and Parole**

To the extent Moore seeks money damages against the Commonwealth, "Magisterial District Court 38-1-12," and the Pennsylvania Board of Probation and Parole, those claims must be dismissed.  The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Magisterial District Courts, as part of Pennsylvania's unified judicial system, share in the Commonwealth's Eleventh Amendment immunity, *see Benn v. First Judicial Dist. of Pa.*, 426

F.3d 233, 241 (3d Cir. 2005); as does the Pennsylvania Board of Probation and Parole. *Spuck v. Pa. Bd. of Prob. and Parole*, 563 F. App'x 156, 158 (3d Cir. 2014) (*per curiam*) ("As the District Court correctly determined, the Eleventh Amendment affords the [Pennsylvania Board of Probation and Parole] protection from suit in an action brought pursuant to 42 U.S.C. § 1983.") The Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b). Moreover, states and their agencies are not considered "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Accordingly, the claims for money damages Moore seeks to assert against the Commonwealth of Pennsylvania, "Magisterial District Court 38-1-12," and the Pennsylvania Board of Probation and Parole may not proceed. The Eleventh Amendment serves as "a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). As this dismissal based on Eleventh Amendment immunity is for lack of subject-matter jurisdiction, the dismissal is without prejudice even though Moore cannot reassert another claim for monetary relief against these defendants in this court. *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999) (agreeing that "a dismissal for lack of subject-matter jurisdiction is not an adjudication on the merits and thus should be ordered 'without prejudice' " (citations omitted)).

### 3. Claims Against Judicial Defendants

Moore asserts claims against Judges Edward C. Kropp, Sr. and Greggory Scott, both of whom presided over elements of his criminal case in state court. Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012)

(*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*).  An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge."  *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).  Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'"  *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).  Because Moore asserts claims against Judges Kropp and Scott based on acts they took in their judicial capacities in a case in which they unquestionably could exercise jurisdiction, they are immune from suit and the claims are dismissed with prejudice.

### 4. Claims Against Prosecutor Defendants

Moore seeks to bring claims against the Montgomery County District Attorney's Office, District Attorney Steele, and Assistant District Attorneys Richard H. Bradbury, Jr., Scott Frank Frame and Kathleen A. McLauguin.  The state court docket indicates that each individual represented the Commonwealth during Moore's criminal proceedings and related forfeiture proceedings.

Claims against the individual prosecutors must be dismissed.  Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case."  *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976).  Absolute immunity extends to the decision to initiate a prosecution, *Imbler*, 424 U.S. at 431, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence.  *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020).  Moreover, District Attorneys and other supervisory prosecutors are likewise entitled

to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth.  *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009).  The immunity rationale of *Imbler* applies to a prosecutor's initiation of an *in rem* civil proceeding for the forfeiture of alleged criminal property.  *Schrob v. Catterson*, 948 F.2d 1402, 1411 (3d Cir. 1991).  Finally, the Montgomery County District Attorney's Office must be dismissed with prejudice because the United States Court of Appeals for the Third Circuit has held that district attorney's offices in Pennsylvania are not entities subject to suit under § 1983.  *See Reitz v. Cty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) (holding that "the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability").  *But see Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694, 711-12 (E.D. Pa. 2015) (declining to follow *Reitz* as *dicta*).  For these reasons, all claims against the Prosecutor Defendants are also dismissed.

### 5. Claims Against "Borough Hall Police Department"

Moore includes "Borough Hall Police Department" in the list of Defendants, which the Court understands to be a reference to the Pottstown Police Department.  Any claim against the Pottstown Police Department is dismissed.  Following the decision in *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), courts concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions.  *See e.g., Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993).  Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not.  *Id.*; *Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the

municipality and its police department as a single entity for purposes of section 1983 liability" citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir.1988)); *Hadesty v. Rush Twp. Police Dep't*, No. 14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016). Therefore, the "Borough Hall Police Department" is not a proper defendant in this case under § 1983 and is dismissed.

### 6. Claims Against the Police Officer Defendants

Moore names Pottstown Police Officers Craig A. Johnson, Jamie O'Niell, and Mark Boyce. He alleges O'Niell "kidnapped" him on when he arrested and transported Moore to the Pottstown Police Department. He also alleges O'Niell and held him for "ransom" of a $50,000 bail bond. Boyce allegedly authorized the warrantless search incident to Moore's arrest. Moore asserts he was unlawfully detained pending his trial, unlawfully arrested, and detained illegally by the Pottstown Police Department. Public records identify Defendant Johnson as the arresting officer in Moore's case and Moore asserts that Johnson informed him that his car would be released to Moore's brother, but Moore's cash and cell phone recovered would be confiscated. While the nature of the constitutional claims Moore seeks to assert against the Police Officer Defendants is not entirely clear, the Court understands Moore to assert false arrest and false detention claims against O'Niell and Johnson, as well as illegal search and seizure claims against Boyce and Johnson pertaining to the post-arrest search and the forfeited $580. He also alleges these Defendants engaged in a conspiracy.

#### A. False Arrest and False Detention Claims

The Fourth Amendment "requires that arrests be supported by probable cause." *Smith v. Angelo*, No. 17-2389, 2018 WL 1003368, at *1 (3d Cir. Feb. 21, 2018). To allege a plausible claim for false arrest under the Fourth Amendment, a plaintiff must assert: "(1) that there was an

arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). Similarly, to allege on a claim for false imprisonment, a plaintiff must show: (1) that he or she "was detained; and (2) that the detention was unlawful." *Id.* at 682-83; *see also White v. Andrusiak*, 655 F. App'x 87, 90 (3d Cir. 2016) ("To make out either a false arrest or false imprisonment claim, [the plaintiff] needed to demonstrate that his arrest was unsupported by probable cause."). Moore asserts he was arrested and detained, but he fails to allege facts to show plausibly that the arrest lacked probable cause and the detention was unlawful. Rather, he asserts in conclusory terms only that he was unlawfully detained pending his trial, unlawfully arrested, and detained illegally by the Pottstown Police Department, and unlawfully detained on illegal criminal charges. (Compl. at 12.) These conclusory assertions are insufficient, *see Iqbal*, 556 U.S. at 678, and the exhibits Moore attaches to his Complaint do not support a plausible claim that his arrest and detention pending trial were without probable cause. Accordingly, these claims will also be dismissed.

### B.  Search and Seizure Claims

The warrantless search claim also fails. When a person has been arrested by officers, the officers are entitled to search the person to prevent the destruction or concealment of evidence, as well as to ensure the arrestee has no weapons with which to harm officers or tools with which he may affect his escape. *Chimel v. California*, 395 U.S. 752, 762-63 (1969); *see also United States v. Robinson*, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment.") Because Moore concedes that the search was incident to his arrest, the claim is not plausible.

To the extent the illegal seizure claim is asserted against the Police Officer Defendants rather than the Prosecutor Defendants, it too fails. In Pennsylvania, the seizure of drug proceeds

is a civil *in rem* proceeding. *See Commonwealth. v. Perez*, 941 A.2d 778, 780 (Pa. Commw. Ct. 2008) ("Civil forfeitures are the *in rem* consequence for wrongdoing prescribed by statute."). Accordingly, any constitutional claim Moore may allege must attack the procedures, or lack thereof, used by Defendant Johnson in seizing Moore's money. *Zinermon v. Burch,* 494 U.S. 113, 125 (1990) (holding that a plaintiff may assert a Fourteenth Amendment claim under the "procedural" aspect of the Due Process Clause, which guarantees fair procedure for the deprivation of a constitutionally protected interest in life, liberty, or property). The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing before the government can deprive an individual of a liberty or property interest. Due process is not a technical conception with a fixed content unrelated to time, place, and circumstance. *Gilbert v. Homar,* 520 U.S. 924, 930 (1997). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).

Moore's due process claims is not plausible. The exhibits Moore attached to the Complaint indicate he received notice of the *in rem* proceeding and was afforded the opportunity to be heard before the property was forfeited. Nothing in the Complaint suggests that the process afforded to Moore was constitutionally insufficient. Accordingly, his due process claim based on the seizure of his $580 is dismissed.

### C. Conspiracy Claims

Moore alleges that Defendant Boyce conspired, apparently with Johnson and O'Niell, to kidnap him because Boyce authorized the search incident to Moore's arrest. (Compl. at 14.) The elements of a § 1983 claim of conspiracy to violate federal civil rights are that "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the

conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under § 1983 that "the conspirators act 'under the color of state law.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "'A conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions.'" *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (*per curiam*) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990)).

Moore's allegation that the Police Officer Defendants engaged in a conspiracy is not plausible. First, the conspiracy allegation is conclusory. Second, as the Court has determined that the false arrest, false detention, and search and seizure claims are all not plausible, any allegation of a conspiracy to violate Moore's constitutional rights under § 1983 likewise is not plausible.

### 7. Claims Against the Parole Board Defendants

Moore contends that the Parole Board Defendants conspired to kidnap him and detain him in violation of his constitutional rights. (Compl. at 14-15.) The Court understands Moore to be alleging a claim that his parole was improperly revoked following his arrest on the new

charges.  A § 1983 Complaint that challenges the fact of confinement based on allegedly defective revocation of parole may not proceed because the proper vehicle for such claims is a petition for writ of *habeas corpus*.  *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006); *see also Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997) ("Few things implicate the validity of continued confinement more directly than the allegedly improper denial of parole.").  Furthermore, pursuant to the favorable termination rule, "a harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable under § 1983 unless that conviction or sentence was "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

The United States Court of Appeals for the Third Circuit has interpreted *Heck* to mean that "a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings."  *Gilles v. Davis*, 427 F.3d 197, 208-09 (3d Cir. 2005).  If the success of a § 1983 claim necessarily requires a finding regarding the "invalidity of the . . . decision to revoke" parole, then the claim fails.  *Williams*, 453 F.3d at 177;[9] *Burton v. Delaware Cty. Court House*, No. 12-4175, 2012 WL 3223691, at *2 (E.D. Pa. Aug. 7, 2012) (the doctrine set forth in *Heck*

---

[9] In *Williams*, the plaintiff instituted a § 1983 action against his parole officer following the revocation of his parole, alleging the officer "seized him without probable cause and caused him to be arrested and falsely incarcerated."  453 F.3d at 176.  The parole officer arrested plaintiff for technical violations of his parole including his failure to obtain approval to change his employment and residence.  *Id.* at 175.  The United States Court of Appeals for the Third Circuit affirmed the district court's dismissal of the case because a finding for plaintiff on his § 1983 claims against the parole officer would necessarily demonstrate the invalidity of the revocation decision, which had not been rendered invalid.  *Id.* at 177.

17

has been extended to civil rights cases challenging parole and probation revocations).[10] Because Moore fails to allege that the decision to revoke his parole and recommit him to SCI Phoenix has been reversed or otherwise impugned, his § 1983 claims against the Parole Board Defendants cannot proceed.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Moore's Complaint in part with prejudice and in part without prejudice. The following claims are dismissed with prejudice: (1) the claim for declaratory and prospective injunctive relief, (2) all claims against the Judicial Defendants, the Prosecutor Defendants, and the Borough Hall Police Department, (4) the claim based on a violation of the Universal Declaration of Human Rights, (5) the due process claim based on the seizure of his $580, and (6) the warrantless search incident to arrest claim. All claims for money damages against the Commonwealth, "Magisterial District Court 38-1-12," and the Pennsylvania Board of Probation and Parole are dismissed without prejudice for lack of

---

[10] *See also McKinney v. Pennsylvania Bd. of Prob. & Parole*, 405 F. App'x 646, 647 (3d Cir. 2010) (holding that McKinney's claims that he had been imprisoned beyond the maximum terms of his sentences for state convictions and parole violations and that the defendants violated his rights by incorrectly calculating his maximum sentence and by failing to conduct a parole revocation or parole hearing when they revoked his parole and continued to detain him were barred by *Heck* "because success on his claims would necessarily imply the invalidity of the fact and the duration of his state confinement, which have not been elsewhere invalidated"); *Connolly v. Arroyo*, 293 F. App'x. 175, 177-78 (3d Cir. 2008) (holding that Connolly's claims relating to the parole-revocation process, including a claim that he was denied a timely revocation hearing, were barred by *Heck*); *Hess v. Chronister*, 247 F. App'x. 377, 380 (3d Cir. 2007) (concluding that Hess's claims that the defendants conspired to violate his rights by holding him on a detainer without notifying him of the charges against him or holding a parole-revocation hearing were barred by *Heck* because success on Hess's claims would necessarily imply that his confinement was invalid); *Worthy v. N.J. State Parole Board*, 184 F. App'x. 262, 264 & 266 (3d Cir. 2006) (affirming dismissal on the basis of *Heck* of claims arising from parole revocation proceedings for damages and declaratory relief including a claim that the defendants did not hold a final revocation hearing).

subject matter jurisdiction. All claims based on the revocation of Moore's parole are dismissed without prejudice as *Heck* barred.[11] Moore's false arrest, false detention, and conspiracy claims are dismissed without prejudice. Moore is granted leave to file an amended complaint if he is capable of curing the defects the Court has identified in the false arrest, false detention, and conspiracy claims against the Police Officer Defendants. An appropriate order follows giving Moore instructions on filing an amended complaint.

**BY THE COURT:**

**/s/ Juan R. Sánchez**
**JUAN R. SÁNCHEZ, C.J.**

[11] Because these claims are barred by *Heck*, Moore may not reassert them in this case. Rather, he may reassert them in a new civil action if the revocation of his parole is ever overruled on appeal or otherwise impugned.